UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

<u>Rebecca Hopkins</u>,
     Plaintiff

     v.                                Case No. 12-cv-238-SM
                                            Opinion No. 2014 DNH 137

<u>ADP, Inc.</u>,
     Defendant

## O R D E R

Pro se plaintiff, Rebecca Hopkins, brings this action against her former employer, ADP, Inc., alleging that she was the victim of gender and disability-based discrimination, in violation of federal law. She also claims ADP unlawfully terminated her employment and wrongfully refused to pay both wages and bonuses to which she was entitled, all in violation of state law. ADP denies any wrongdoing and moves for summary judgment on each of the four counts advanced in Hopkins' complaint. Hopkins objects and also moves for summary judgment. For the reasons discussed, Hopkins' motion is denied and ADP's motion is granted.

### Standard of Review

When ruling on a motion for summary judgment, the court must "view the entire record in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in

that party's favor."  Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990).  Summary judgment is appropriate when the record reveals "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In this context, "a fact is 'material' if it potentially affects the outcome of the suit and a dispute over it is 'genuine' if the parties' positions on the issue are supported by conflicting evidence."  Int'l Ass'n of Machinists & Aerospace Workers v. Winship Green Nursing Ctr., 103 F.3d 196, 199-200 (1st Cir. 1996) (citations omitted).  Nevertheless, if the non-moving party's "evidence is merely colorable, or is not significantly probative," no genuine dispute as to a material fact has been proved, and "summary judgment may be granted."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986) (citations omitted).

The key, then, to defeating a properly supported motion for summary judgment is the non-movant's ability to support his or her claims concerning disputed material facts with evidence that conflicts with that proffered by the moving party.  See generally Fed. R. Civ. P. 56(c).  It naturally follows that while a reviewing court must take into account all properly documented facts, it may ignore a party's bald assertions, speculation, and unsupported conclusions.  See Serapion v. Martinez, 119 F.3d 982, 987 (1st Cir. 1997).  See also Scott v. Harris, 550 U.S. 372, 380

(2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.").

    This case is somewhat atypical in that, while Hopkins has objected to ADP's motion for summary judgment, she has not filed an affidavit, deposition testimony, or other acceptable form of documentary evidence or sworn testimony to support her version of the facts.  Although Hopkins is proceeding pro se (and has, for that reason, been afforded a great deal of latitude in this case), the court cannot consider statements or written materials that have not been properly authenticated; when opposing a motion for summary judgment, a party must rely upon material "that would be admissible in evidence."  Fed. R. Civ. P. 56(c)(2).  Accordingly, the court must take as admitted the factual statements recited in ADP's motion, as supported by the attached exhibits.  See Local Rule 56.1(b) ("All properly supported material facts set forth in the moving party's factual statement may be deemed admitted unless properly opposed by the adverse party.").  See also Puerto Rico American Ins. Co. v. Rivera-Vazquez, 603 F.3d 125, 131 (1st Cir. 2010) (discussing Puerto Rico's analog to Local Rule 56.1, also known as the "anti-ferret rule," and holding that, "This type of rule is aimed at enabling

a district court to adjudicate a summary judgment motion without endless rummaging through a plethoric record.  Given this root purpose, we have held with a regularity bordering on the monotonous that parties ignore the strictures of an 'anti-ferret' rule at their peril.") (citations omitted).

Importantly, however, Hopkins' failure to properly object does not automatically entitle ADP to judgment as a matter of law.  The court must still determine whether the uncontested facts presented by ADP, when viewed in the light most favorable to Hopkins, entitle it to judgment as a matter of law.  See, e.g., Stonkus v. City of Brockton Sch. Dep't, 322 F.3d 97, 102 (1st Cir. 2003).

## Background[1]

Hopkins worked for ADP from 1985 to 1989, and again from 1993 until her employment was terminated in August of 2011. After her return to ADP in 1993, she says she received the "President's Club" award in seven consecutive years for having exceeded her assigned sales quota.  In 2006, she claims to have been awarded the "National Leadership Award."  Despite her seemingly laudatory performance, Hopkins says she was the victim

---

[1]    Because Hopkins has not submitted an affidavit, the court has drawn some of the (largely non-material) background facts from her unverified complaint.

of gender-based discrimination, in that she was assigned increasingly difficult and less desirable sales territories and was "passed over" for promotion in favor of a less qualified male employee.[2]  Hopkins also says that ADP miscalculated her sales, causing her to miss quotas, fail to qualify for another President's Club award, and not receive year-end bonuses to which she would have been entitled.  Although she says she reported her concerns through ADP's "Ethics Hotline" in April of 2011, she claims ADP did not follow up on her report.

Soon thereafter, in June of 2011, Hopkins says ADP offered her a severance package.  She responded to that offer in an e-mail dated June 20, in which she again reported that she believed she had been the victim of unlawful discrimination.  It seems that negotiations on Hopkins' voluntary departure from the company broke down and Hopkins then went out on medical leave. Hopkins' physician cleared her to return to work on July 28, but she did not actually return to her job until approximately two weeks later.  In response, ADP invoked its corporate policy on "Attendance and Punctuality" and fired Hopkins for "job abandonment" - that is, for having failed "to call in or report

---

[2]     ADP points out that to say Hopkins was "passed over" for the promotion in favor of another employee is not entirely accurate.  ADP posted notice of the vacant position on the company's internal website (of which Hopkins was aware), yet Hopkins never applied for the position.  See Hopkins Deposition at 157-58.

to work for two consecutive workdays."  Hopkins denies having abandoned her job and says she kept her contact at the worker's compensation insurance carrier fully apprised of all information provided by her physicians - including the fact that although she had been orally released to return to work, that release was subject to certain yet-to-be finalized conditions (which she says she expected to receive in writing from her physician). According to Hopkins, her discharge for "job abandonment" was little more than a thinly veiled pretext for unlawful gender-based discrimination and retaliation for her having taken time off due to a work-related injury.[3]

Perhaps not surprisingly, ADP paints a completely different picture - one of an employee who was an inconsistent performer and the subject of several disciplinary reports for sub-standard sales.  Prior to her discharge, Hopkins' performance had been below her target quota for three consecutive years.  See Verbal Warning dated October 5, 2010 (document no. 16-4) (noting that Hopkins' year-to-date sales performance was at less than 70 percent of her target; she was averaging only 1.4 new sales

---

[3]     It bears repeating that Hopkins' version of the relevant factual background leading up to her discharge is largely unsworn and speculative.  The court discussed that fact with her (on the record, and at length) during the final pretrial conference on May 30, 2014.  Yet, she has not supplemented her filings with an affidavit, nor has she drawn the court's attention to specific portions of her deposition that support her version of the facts.

appointments per week against a goal of 5; and she had three consecutive years with performance below her target quota).

And, says ADP, although Hopkins now points to instances dating back 20 years during which she claims to have been the victim of gender and/or age discrimination, she never reported those alleged events in a timely manner.  Instead, she raised them only recently in her call to ADP's "Ethics Hotline," when she realized she was under-performing, not meeting sales quotas, and fearful that she might be fired.  As to the allegations of mistreatment and discrimination Hopkins made during her call to the Ethics Hotline, ADP says each was thoroughly investigated and none was found to have any merit.  See Report of Mariza Hopkins dated June 7, 2011 (document no. 16-6) (documenting the investigation and factual findings that undermine each of Hopkins' allegations).  And, finally, ADP says Hopkins failed to keep it fully informed when she was cleared to return to work by her physician yet remained out of work for approximately two weeks longer than was medically necessary.  From ADP's perspective that, apparently, was the last straw, and it invoked Hopkins' unexcused absence from work as grounds for her dismissal.

**Discussion**

Hopkins advances four claims in her complaint: gender-based discrimination (count one); disability-based discrimination (count two); wrongful termination (count three); and a state statutory wage claim (count four).

I.   <u>Wrongful Termination</u>.

It is probably best to begin with a discussion of Hopkins' weakest claim: the assertion that her employment was terminated in violation of state law because she took "advantage of something that public policy supports; that is, making application for and receiving workers' compensation when injured on the job."  Complaint (document no. 1) at para. 68.  The record evidence does not support such a claim.  In fact, at her deposition, Hopkins testified that she did not believe she was fired for having filed a workers' compensation claim.  <u>See</u> Hopkins deposition (document no. 16-2) at 57 (deposition page 218).  Consequently, as to count three of Hopkins' complaint, ADP is entitled to judgment as a matter of law.[4]

--------

[4]     To be fair, it bears noting that, in advancing her wrongful termination claim, Hopkins stated that because she "has not received ADP's internal communication or conducted discovery, she pleads this count in the alternative."

II.  <u>Disability-Based Discrimination</u>.

     Similarly, there is simply insufficient evidence in the
record to support Hopkins' claim that ADP regarded her as
disabled and discriminated against her on that basis.  <u>See</u>
Plaintiff's Answers to Interrogatories (document no. 16-13) at
11-17 (in a six-page discussion of the bases for her gender and
disability discrimination claims, Hopkins makes only a single
reference to her alleged (perceived) disability: "At the time I
was purportedly abandoning my job, I was out on workers'
compensation leave due to carpal tunnel syndrome and related
treatment.  This gave the impression that I was disabled.").

     As a matter of law, that is insufficient to support her
claim of disability-based discrimination.  <u>See generally</u> <u>Roman-</u>
<u>Oliveras v. Puerto Rico Elec. Power Auth.</u>, 655 F.3d 43, 49 (1st
Cir. 2011) (discussing the essential elements of a "regarded as
disabled" claim under the ADA).  <u>See also</u> <u>Ruiz Rivera v. Pfizer</u>
<u>Pharms., LLC</u>, 521 F.3d 76, 84-85 (1st Cir. 2008).  ADP is,
therefore, entitled to judgment as a matter of law as to that
claim (count two) as well.

III. <u>Gender-Based Discrimination</u>.

     Much of the conduct about which Hopkins complains consists
of isolated, discreet acts of alleged gender-based discrimination
that occurred over the span of more than 20 years and are plainly

9

time-barred.  See generally National R.R. Passenger Corp. v.
Morgan, 536 U.S. 101, 114 (2002) ("Discrete acts such as
termination, failure to promote, denial of transfer, or refusal
to hire are easy to identify.  Each incident of discrimination
and each retaliatory adverse employment decision constitutes a
separate actionable unlawful employment practice. . . . only
those acts that occurred 300 days before [the date on which
plaintiff filed his charge of discrimination with the state
agency] are actionable.").  See also O'Rourke v. City of
Providence, 235 F.3d 713, 731 (1st Cir. 2001) (describing the
factors to consider when distinguishing between a continuing
violation of Title VII and discrete, unrelated acts of
discrimination).  Here, Hopkins filed her charge of
discrimination on December 28, 2011.  Consequently, only those
acts of discrimination occurring on or after March 3, 2011, are
actionable.

     With regard to timely acts of alleged gender-based
discrimination, Hopkins points to a deal with N.H. Industries.
See Hopkins Answers to Interrogatories (document no. 16-13) at 15
(page 6 of 9).  Although her account of the transaction is
somewhat confusing, she seems to allege that management
purposefully deprived her of credit for a sale to which she was
entitled, and instead credited that sale to a less experienced
male colleague.  She says she was given three different

(conflicting) explanations for why the sale was credited as it was - suggesting that ADP's proffered explanations were pretextual and the real reason was gender discrimination.

Hopkins also points to the fact that she was disciplined for "inconsistent performance," despite having very recently met 157 percent of her sales target.[5]  She also points to the temporal proximity between her call to ADP's "Ethics Hotline" (in which she complained of discrimination) and the termination of her employment for "job abandonment."

Perhaps understandably (because Hopkins is proceeding pro se), the record evidence in support of her discrimination claim is thin and consists almost entirely of speculation.  See, e.g., Hopkins' Deposition at 132 (stating that gender-based discrimination is "the only thing that makes sense" to explain why she did not receive a particular bonus).  See also Id. at 187 (stating again that gender-based discrimination is "the only thing that makes sense" to explain her not having been offered a job for which she had applied).  Applying the McDonnell-Douglas

---

[5]     It appears that Hopkins is referring to the fact that in July of 2010, she recorded sales that were nearly 160 percent of her target for that month (and the fiscal year, which appears to begin in July).  But, just three months later, in September of 2010, she had dropped to zero percent of her monthly target, and just 69 percent of her annual target.  Presumably, that is why ADP labeled her performance as "inconsistent."

burden-shifting analysis, Hopkins evidence is simply insufficient to avoid summary judgment.  See generally McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).[6]

The court will assume that Hopkins has pointed to sufficient admissible evidence to make out a prima facie claim of gender-based discrimination.  See Smith v. Stratus Computer, Inc., 40 F.3d 11, 15 (1st Cir. 1994).  ADP has, in turn, proffered a legitimate non-discriminatory reason for its decision to terminate Hopkins' employment: Her failure to call in or report to work for approximately 2 weeks after she had been medically cleared to return.  See generally LeBlanc v. Great Am. Ins. Co., 6 F.3d 836, 842 (1st Cir. 1993).  Thus, the burden reverts to Hopkins, who must demonstrate that the non-discriminatory reason given by ADP was false and a mere pretext for unlawful gender-based discrimination.  See St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 510-11 (1993).  See also LeBlanc, 6 F.3d at 842.  To carry that burden, Hopkins must produce "not only minimally sufficient evidence of pretext, but evidence that overall

_____

[6]     The Supreme Court's decision in Desert Palace, Inc. v. Costa, 539 U.S. 90 (2003), has given rise to some uncertainty as to whether the McDonnell-Douglas analysis remains valid.  See Gatsas v. Manchester School Dist., 2006 WL 340731 at *4 n. 3 (D.N.H. Nov. 7, 2006).  But, as the court of appeals has noted, "in Raytheon Co. v. Hernandez, 540 U.S. 44 (2003), the Supreme Court used the McDonnell-Douglas framework without commentary in a post-Desert Palace case."  Hillstrom v. Best Western TLC Hotel, 354 F.3d 27, 31 (1st Cir. 2003).

reasonably supports a finding of discriminatory animus." Id., at
843 (citation and internal quotations omitted). Importantly, she
"may not simply refute or question the employer's reasons. To
defeat summary judgment at this stage, a plaintiff must produce
evidence that the real reason for the employer's actions was
discrimination." Gadson v. Concord Hosp., 966 F.2d 32, 34 (1st
Cir. 1992). See also Desert Palace, 539 U.S. at 101 (holding
that the plaintiff must "present sufficient evidence for a
reasonable jury to conclude, by a preponderance of the evidence,
that race, color, religion, sex, or national origin was a
motivating factor for any employment practice") (internal
quotation marks omitted).

    Aside from Hopkins' speculation that gender-based
discrimination must have been a motivating factor behind her
dismissal because "it's the only thing that makes sense,"
Hopkins' deposition at 132 and 187, or because "it just seems
obvious," id. at 142-43, she has pointed to insufficient evidence
to support such a claim. Instead, the undisputed evidence of
record shows that: Hopkins did not notify ADP when her physician
cleared her to return to work; she failed call in or report to
work within two days of having received medical clearance to do
so; ADP has a written policy that subjects employees to discharge
if they fail to call in or report to work for two consecutive

workdays; and ADP invoked that policy and applied it to Hopkins
in a non-discriminatory manner.

    To be sure, ADP may have reacted in what, on this record,
appears to be an overly harsh manner that lacked empathy.  ADP
may have even made what some might consider an incorrect business
decision in terminating Hopkins' employment-at-will.  But, as
Hopkins' employer, it was entitled to do so - provided, of
course, that it acted without unlawful discriminatory bias.  Even
if ADP mistakenly thought Hopkins had "abandoned" her job (as
Hopkins says), an employer is entitled to be wrong, provided it
"has an honest belief in its proffered non-discriminatory reason
for discharging an employee."  Majewski v. Automatic Data
Processing, Inc., 274 F.3d 1106, 1117 (6th Cir. 2001).  As the
Court of Appeals for the Tenth Circuit has observed:

        Under McDonnell Douglas, our role isn't to ask whether
        the employer's decision was wise, fair or correct, but
        whether it honestly believed the legitimate,
        nondiscriminatory reasons it gave for its conduct and
        acted in good faith on those beliefs.

        That individuals and companies sometimes make
        employment decisions that prove to be bad ones in
        hindsight usually suggests no more than that — that
        they got it wrong.  To support an inference of pretext,
        to suggest that something more nefarious might be at
        play, a plaintiff must produce evidence that the
        employer did more than get it wrong.  He or she must
        come forward with evidence that the employer didn't
        really believe its proffered reasons for action and
        thus may have been pursuing a hidden discriminatory
        agenda.  This is because Title VII licenses us not to
        act as a "super personnel department" to undo bad

employment decisions; instead, it charges us to serve
as a vital means for redressing discriminatory ones.

Johnson v. Weld County, Colo., 594 F.3d 1202, 1211 (10th Cir.
2010) (citations and internal punctuation omitted).


Hopkins claim of gender-based discrimination (count one)
fails under McDonnell Douglas, and ADP's motion for summary
judgment must, necessarily, be granted.

IV.  State Law Wage Claim.

As with her gender-based discrimination claim, Hopkins'
claim that she was unlawfully denied wages to which she was
entitled is insufficiently supported by admissible evidence.
Although she testified at her deposition that she believes ADP
knowingly and purposefully miscalculated her commissions, or
credited her sales to other employees, or credited those sales to
her but in later quarters (to preclude her from making her sales
quota and receiving a performance bonus) she has not supported
those claims with sales reports, commission reports, or the like.
Without more, her claimed entitlement to unpaid wages is little
more than rank speculation.


On this record, there is simply insufficient evidence to
support a viable claim under New Hampshire's wage law, N.H. Rev.
Stat. Ann. ch. 275.  Consequently, ADP's motion for summary

15

judgment as to Hopkins' wage claim (count four) must, necessarily, be granted.

## Conclusion

For the foregoing reasons, defendant's motion for summary judgment (document no. 16) is granted, and plaintiff's motion for summary judgment (document no. 52) is denied.  The Clerk of Court shall enter judgment in accordance with this order and close the case.

**SO ORDERED.**

Steven J. McAuliffe
United States District Judge

June 18, 2014

cc:  Rebecca Hopkins, pro se
     Debra W. Ford, Esq.
     Martha Van Oot, Esq.